UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE ASHLEY, as administrator of the estate of AMBER ADAMS, deceased, | No. 12 CV 8309 |
| Plaintiff, | |
| v. | Magistrate Judge Young B. Kim |
| SCHNEIDER NATIONAL CARRIERS, INC., and SHAUN JACKSON, | |
| Defendants. | |
| SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and SHAUN JACKSON, | |
| Third Party Plaintiffs, | |
| v. | |
| JOSEPH MALY and NICHOLAS MALY, | |
| Third Party Defendants. | March 11, 2014 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Catherine Ashley brings this suit under the Illinois Wrongful Death Act, 740 ILCS 180, in her capacity as administrator of the estate of Amber Adams, her deceased daughter, against defendants Schneider National Carriers, Inc. ("SNC") and Shaun Jackson. In December 2013, SNC issued a subpoena to Ashley's health provider to obtain copies of her medical records. Before the court is Ashley's Motion to Quash Record Subpoena to Lake County Health Department Community

Health Center and for Protective Order Barring Similar Record Requests. (R. 58.) The motion is granted for the following reasons:

## Background

According to the complaint filed in this case, on April 7, 2012, Amber Adams was riding in the passenger seat of a car that collided with a tractor-trailer that had stopped on the shoulder of Interstate 355 in Illinois. (R. 1, Compl. ¶¶ 12-15.) Adams was killed by the impact. (Id. ¶ 16.) She is survived by five family members (her mother, father, two siblings, and a half-sister), who are her "next of kin" under the Illinois Wrongful Death Act. (R. 58, Mot. ¶ 1.) In bringing this suit, Adams's estate seeks to recover damages for the personal and pecuniary losses Adams's next of kin claim to have suffered as a result of her death. (R. 1, Compl. ¶ 21.)

After Ashley brought this wrongful death suit on behalf of Adams's estate and discovery commenced, the assigned district judge entered a HIPAA order on December 12, 2013, allowing SNC to receive Ashley's protected health information, subject to certain conditions. (R. 51.) One of these conditions states that SNC must comply with the requirements of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (the "Mental Health Act") when seeking Ashley's protected health information.[1] (Id. ¶ 7.) On December 17, 2013, SNC issued a subpoena to the Lake County Health Department Community Health Center

---

[1] As part of its motion Ashley asks the court to "reconsider and vacate its HIPAA order." (R. 58, Mot. ¶ 17.) That request is outside the scope of this court's referral order, but because the HIPAA order governs how medical information can be used after it is obtained, it is unnecessary for this court to respond to that request to resolve the privilege and relevancy questions raised in the current motion and response.

2

("Health Center") seeking medical documents relating to Ashley's examination and treatment. Specifically, the subpoena seeks:

> Any and all clinical or doctor's records, notes, memoranda, medical reports, x-ray reports, index cards, history notes and records, medical bills, any and all other records and reports in your possession or control relating to the examination and treatment of Catherine Ashley . . . including the records from any and all Lake County Health Department offices.

(R. 58, Mot., Ex. A.) In response, Ashley filed the current motion to quash, arguing that the subpoena constitutes an invasion of privacy seeking privileged information in violation of Illinois law. On January 3, 2014, the assigned district judge referred this motion to this court for resolution. (R. 62.)

## Analysis

In Ashley's motion, she seeks an order quashing SNC's subpoena to the Health Center and a protective order barring SNC from seeking medical records for Ashley and other next of kin. (R. 58, Mot. ¶ 20.) SNC argues that Ashley's mental health records are discoverable because, according to it, she has put her own mental condition at issue by seeking damages for loss of society and by testifying during her deposition about her anxiety and depression. (R. 73, Resp. ¶ 14.) SNC further argues that it is entitled to her mental health records in order to rebut a loss of society presumption that Illinois law grants lineal next of kin. (Id. ¶ 20.) SNC also seeks all of Ashley's medical records to calculate her life expectancy, which it argues is relevant to the question of her pecuniary loss. (Id. ¶ 36.) Ashley argues that SNC is not entitled to discover any of her medical records because, she says, they constitute privileged information protected by the physician-patient and therapist-

3

patient privileges. (R. 58, Mot. ¶ 20; R. 75, Reply at 2); 740 ILCS 110/3; 735 ILCS 5/8-802.

Whether to quash a subpoena is a matter within the district court's discretion, subject to the strictures governing the issuance of subpoenas set forth in Federal Rule of Civil Procedure 45. *See Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012). Under Rule 45(d)(3)(A) the court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." The party seeking to quash a subpoena on privilege grounds bears the burden of showing that the materials meet that requirement. *See Pacific Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189, 193 (N.D. Ill. 2012). The parties agree that because this is a diversity case, the court looks to state law to resolve the issue of privilege. *See Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 693 (7th Cir. 2005).

Ashley argues that SNC's subpoena should be quashed because her medical records are privileged and protected from disclosure by Illinois statute. Specifically, she points to Illinois's statutory physician-patient privilege, which states that no physician "shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character," subject to certain exceptions she says are inapplicable here. *See* 735 ILCS 5/8-802. With respect to mental-health records in particular, the Mental Health Act provides that any record kept by a therapist and any communication made by a patient to a therapist in the course of providing mental health services is confidential. 740 ILCS 110/3; *Reda v.*

4

*Advocate Health Care*, 765 N.E.2d 1002, 1007 (Ill. 2002). The Mental Health Act further provides that in any civil proceeding, "a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." 740 ILCS 110/10(a). The term "therapist" includes a "psychiatrist, physician, psychologist, social worker, or nurse providing mental health" services. 740 ILCS 110/2. Neither party contests that Ashley is a "recipient" under the Act who saw a "therapist."

In the course of the parties' briefing on the motion it has become clear that SNC's main goal in subpoenaing Ashley's medical records is to discover the specifics of any mental-health treatment she received before and after her daughter's death. As an initial matter, Ashley points out that SNC is not entitled to subpoena her mental-health records without a court order and an opportunity to submit the subpoenaed documents to the court for an in camera review. The Mental Health Act makes clear that a party may not "serve a subpoena seeking to obtain access to records or communications under this Act unless the subpoena is accompanied by a written order issued by a judge" or by the patient's written consent. 740 ILCS 110/10(d). Ashley clearly has not consented to the disclosure of her records, and the subpoena attached to her motion is unaccompanied by a specific court order from a judge. (R. 58, Mot., Ex. A.) Even if SNC had obtained a court order, before Ashley's mental-health records could be disclosed she would have the right to have this court conduct an in camera review of those records. *See* 740 ILCS 110/10(b). The purpose of that inspection is to determine whether the subpoenaed information is:

> relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury[.]

Id. § 10(a)(1); *see also Reda*, 765 N.E.2d at 1008. As Ashley points out, SNC must comply with these procedural steps before it can acquire the information it seeks.

Even setting aside those procedural issues, SNC's subpoena also runs into substantive barriers under Illinois law. The Mental Health Act is "carefully drawn to maintain the confidentiality of mental health records except in the specific circumstances explicitly enumerated." *Sassali v. Rockford Mem'l Hosp.*, 693 N.E.2d 1287, 1290 (Ill. Ct. App. 1998). One such exception provides that mental health records may only be disclosed in a civil proceeding where the patient "introduces [her] mental condition or any aspect of [her] services received for such condition as an element of [her] claim or defense." 740 ILCS 110/10(a)(1); *see also Norskog v. Pfiel*, 755 N.E.2d 1, 11 (Ill. 2001). But a plaintiff's mental condition is not deemed to be introduced simply because pain and suffering is an element of the claim, unless the patient first testifies about the record or communication. 740 ILCS 110/10(a)(1). A party seeking the disclosure of mental health records faces a "formidable challenge" because the exceptions to the Mental Health Act's protections are "narrowly crafted." *Norskog*, 755 N.E.2d at 9-10.

SNC first argues that an exception to the statutory privilege applies here because Ashley put her mental health at issue by seeking pecuniary damages for loss of society. (R. 73, Resp. ¶ 14.) As SNC correctly notes, the Illinois Pattern Jury

6

Instructions for pecuniary loss in a wrongful death claim permit an analysis of the "grief, sorrow, and mental suffering" of the decedent's next of kin. *See* Ill. Pattern Jury Instr. Civ. 31.03. However, that argument overlooks the fact that because Ashley is bringing the wrongful death suit not in her personal capacity but as the estate's administrator, this is not a case where the *plaintiff* has interjected her emotional state into a case by asserting a particular claim turning on her own mental health. The statutory exception SNC relies on makes clear that a plaintiff can put her mental health at issue if her mental condition is an element of her claim. *See* 740 ILCS 110/10(a)(1). But here, the plaintiff is the estate and Ashley is named only in her capacity as the estate's administrator. *See Wourms v. Fields*, __ F.3d __, 2014 WL 448450, at *1 (7th Cir. Feb. 5, 2014) (noting in a civil rights suit that the "administrator of an estate . . . is the authorized suitor on the estate's behalf, not the estate itself or its beneficiaries"). If the exception were read as SNC proposes, then the mental health records of all of a deceased person's next of kin could be open to examination simply because they are the potential beneficiaries of a wrongful-death suit brought by an estate. Because SNC has cited no cases supporting that broad reading, and because the privilege exceptions must be narrowly construed, *see Norskog*, 755 N.E.2d at 9-10, this court agrees that Ashley has not put her mental health at issue just by bringing this suit in her role as the estate's administrator.

Even putting aside the capacity in which Ashley brings this suit, SNC has not shown that the exception it relies on applies. According to SNC, because the

7

"grief, sorrow, and mental suffering" experienced by next of kin is relevant to the question of pecuniary loss, *see* Ill. Pattern Jury Instr. Civ. 31.03, Ashley cannot assert the therapist-patient privilege to protect her mental health records from disclosure. (R. 73, Resp. ¶¶ 14-15.) But SNC is conflating two separate issues: relevancy and privilege, overlooking that the "legislature carefully drafted the Act to maintain the confidentiality of mental-health records except in the specific circumstances explicitly enumerated." *Reda*, 765 N.E.2d at 1010. For example, a plaintiff does not waive the therapist-patient privilege by claiming past and future pain and suffering as an element of her damages in a negligence action. *Tylitzki v. Triple X Serv., Inc.*, 261 N.E.2d 533, 535-36 (Ill. Ct. App. 1970). Unless the plaintiff's mental condition is "affirmatively asserted to be in issue," the statutory therapist-patient privilege is not waived. *Id.* at 536. Because the Mental Health Act makes clear that "mental condition shall not be deemed to be introduced merely by making a claim" for which pain and suffering is an element, *see* 740 ILCS 110/10(a)(1), SNC has not shown that Ashley waived the privilege just by bringing the current claim.

SNC also argues that because in her deposition Ashley answered questions relating to her mental health, the privilege no longer attaches to any of her mental-health records. (R. 73, Resp. ¶ 14.) SNC asserts that it is entitled to discover Ashley's mental health records because, according to it, she introduced her mental condition as an issue in her deposition by testifying that she experienced anxiety attacks and took certain medications for anxiety and depression both before and

after the accident that caused her daughter's death. Specifically, SNC points to portions of her testimony such as:

> Q: Did [your medical treaters] give you any medication for shock or anxiety or anything?
> A: No. I had to see my own doctor, and he gave me some medicine.
> Q: Okay. Who was that doctor?
> A: Honestly, I don't even remember his name. He's out of the Lake County Health Department.
> Q: Do you recall what he gave you?
> A: I was on Xanax.
> Q: Anything else?
> A: For my anxiety, no.
> Q: Did he give you anything else for depression or –
> A: No. They were changing my medicines there, so I have to say no.
> Q: Were you previously on some depression medication?
> A: Yes.
> Q: Okay. Which one were you on before the accident, if you recall?

(R. 73, Resp. ¶ 7.) At this point in the deposition, Ashley's attorney raised a relevance objection. SNC's attorney continued questioning Ashley about her medication for her anxiety and depression:

> Q: Had you ever been on [Xanax] before?
> A: I want to say maybe one other time I was on it for a short while.
> Q: Was there a precipitating event?
> A: I believe right after my sister passed I was on it.
> Q: Once again, that was for a short – like two weeks?
> A: Yeah, it was just a few weeks.
> Q: Were you having sleeping problems before the accident at all?
> A: No.

(Id.) SNC suggests that this testimony is sufficient to waive the privilege and allow disclosure of her mental health records. (Id. ¶¶ 14-15.) However, because Illinois courts have narrowly construed exceptions to the Mental Health Act, Ashley's limited testimony does not justify the breadth of disclosure SNC seeks here. *See,*

9

*e.g.*, *In re Marriage of Bonneau*, 691 N.E.2d 123, 131 (Ill. Ct. App. 1998) ("Confidentiality privileges are too important to be brushed aside . . . it is not difficult to consider the many ways in which it could be argued that a party's physical or mental health is in issue, and soon there would exist more exceptions to the statutory privileges than there would be areas of inquiry protected by the privileges."). In the testimony SNC cites Ashley did not discuss the specifics of her interactions with her health-care providers or treatment and her limited testimony—given in response to questions posed at her deposition—pertaining to prescribed medication and anxiety is not enough to waive the privilege with respect to the entirety of her medical records. *See, e.g.*, *Santelli v. Electro-Motive*, 188 F.R.D. 306, 310 (N.D. Ill. 1999) (noting that dates of treatment and identification of therapists fall outside the scope of the federal therapist-patient privilege); *State v. Ermatinger*, 752 S.W.2d 344, 350 (Mo. Ct. App. 1988) (victim's deposition testimony concerning whether his doctor had ever prescribed him medication was insufficient to waive statutory physician-patient privilege); *Simpson v. Braider*, 104 F.R.D. 512, 523 (D.D.C. 1985) (disclosing names of therapists, dates of visits, and general purpose of visits were insufficient to support a finding of physician-patient privilege waiver). Given the limited scope of the deposition testimony to which SNC points, it has not shown that Ashley waived the psychotherapist-patient privilege that attaches to her mental-health records.

Nor is SNC entitled to subpoena Ashley's entire medical file in an effort to rebut the presumption of pecuniary loss that applies under the Wrongful Death Act

10

with respect to lineal next of kin's loss of a child's society. The Illinois Wrongful Death Act provides an independent cause of action for damages resulting from a decedent's death caused by neglect. *Kessinger v. Grefco, Inc.*, 623 N.E.2d 946, 948 (Ill. Ct. App. 1993). Under the Act, next of kin are entitled to recover for the pecuniary losses, such as loss of society, incurred as a result of the death. *Turner v. Williams*, 762 N.E.2d 70, 77 (Ill. Ct. App. 2001). Although "the law presumes substantial pecuniary damages arising from the relationship," evidence of the quality of the relationships between the decedent and lineal next of kin can be considered when determining what weight to give this presumption. *Dotson v. Sears, Roebuck & Co.*, 510 N.E.2d 1208, 1218 (Ill. Ct. App. 1987). Here, SNC states that it subpoenaed Ashley's mental-health records in an effort to rebut the presumption that she suffered substantial pecuniary losses stemming from her daughter's death. (R. 73, Resp. ¶ 17.)

SNC's argument that Ashley's mental-health records are relevant to rebut a presumption of pecuniary loss does not justify the scope of its subpoena, which seeks the entirety of the medical records maintained by Ashley's healthcare provider. Its argument would effectively open up the entire medical history of all of the deceased's lineal next of kin any time the presumption applies. Illinois law has consistently noted the narrow scope of therapist-patient privilege exceptions. The therapist-patient privilege is "grounded in the crucial role of confidentiality in a therapeutic relationship." *Johnston v. Weil*, 946 N.E.2d 329, 339 (Ill. 2011). In order for that therapeutic relationship to be effective, the patient must feel an

11

atmosphere of trust. *Id.* Because counseling sessions can entail sensitive topics, "the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* (emphasis, quotation, and citation omitted). SNC has argued that it must have access to Ashley's mental health records to rebut the presumption of pecuniary loss of a child's society, but it has not shown how these records would shed any light on the quality of Ashley's relationship with her daughter. Even if it had, whether the evidence might be relevant is a separate question from whether the privilege attaches. *See Hucko v. City of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999) ("Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged[.]" (quotation and citation omitted)).

In *Thiele v. Ortiz*, the Illinois court rejected the defendant's argument that he was entitled to introduce evidence of psychological evaluations that the plaintiffs' son received before his death to rebut a loss of society claim. 520 N.E.2d 881, 887 (Ill. Ct. App. 1988). In holding that the plaintiffs' claim for loss of their son's society did not place their son's mental state at issue, the court emphasized the importance of confidentiality and the care required in applying the exception. *Id.* at 887. The court reasoned that allowing the defendant to seek the decedent's mental health records to rebut evidence presented by the plaintiff in a case where mental condition was not specifically at issue would be to open a "pandora's box of inquiry into the mental condition of claimants." *Id.* at 888. Here, SNC's attempt to fish out

evidence that might rebut the presumption of pecuniary injury does not justify the scope of its subpoena.

Finally, SNC argues that all of Ashley's health records—not just those pertaining to her mental health—are discoverable to calculate her life expectancy, which it asserts is relevant for a jury's calculation of damages with respect to the continuance of her life. (R. 73, Resp. ¶¶ 36-37.) In other words, SNC argues that it is entitled to calculate Ashley's life expectancy so that a jury could gauge the likely longevity of her suffering. But again, the fact that her life expectancy might be relevant to her loss of society claim is a distinct question from whether her medical records are privileged. "By definition, privileges exclude from a case otherwise relevant information." *Santelli*, 188 F.R.D. at 308. Here, SNC has not disputed that Illinois's physician-patient privilege attaches to Ashley's medical records, *see* 735 ILCS 5/8-802, nor has it shown that she waived that privilege. In short, SNC has not shown that Ashley's entire medical history is available for discovery, despite the application of the statutory physician-patient privilege and the Mental Health Act, simply because she seeks damages in a wrongful death suit as an administrator of her deceased daughter's estate.

Although the court grants the motion and quashes the subpoena, Ashley should be mindful that courts in this district have made clear that privileges may not be used as both sword and shield. *See Santelli*, 188 F.R.D. at 308. If she plans to introduce evidence of her psychological treatment in support of the estate's damages claim at trial, rather than relying on the emotional distress damages "that

13

naturally flow from the defendants' alleged misconduct," she may waive the privilege. *See Awalt v. Marketti*, 287 F.R.D. 409, 418 (N.D. Ill. 2012).

## Conclusion

Ashley did not put her entire medical history at issue merely by bringing a wrongful death action in her role as administrator on behalf of Adams's next of kin. SNC has not shown that any exceptions to the privilege attached to her health records exist, nor has it justified the broad scope of records it seeks. Accordingly, Ashley's motion to quash SNC's subpoena is granted.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**