# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE ASHLEY, | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 12-cv-8309 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| SCHNEIDER NATIONAL CARRIERS, INC., | ) | |
| and SHAUN CHRISTOPER JACKSON, | ) | |
|     Defendants. | ) | |
| | ) | |

___

| | | |
|---|---|---|
| JOSEPH MALY, | ) | |
|     Plaintiff, | ) | Case No. 13-cv-3042 |
| | ) |     Consolidated for all purposes |
| v. | ) |     with Case No. 12-cv-8309 |
| | ) | |
| SCHNEIDER NATIONAL CARRIERS, INC., | ) | Judge Robert M. Dow, Jr. |
| and SHAUN CHRISTOPER JACKSON, | ) | |
|     Defendants. | ) | |

## MEMORANDUM AND OPINION ORDER

For the reasons set forth below, the Court grants Third-Party Defendant Joseph Maly's motion for good faith finding [126], concluding that Joseph Maly's settlement with Plaintiff Catherine Ashley, as administrator of the Estate of Amber Adams, was made in good faith. Accordingly, Defendants' third-party complaint for contribution against Third-Party Defendant Joseph Maly [67] is stricken in its entirety pursuant to § 2(d) of the Joint Tortfeasor Contribution Act. Joseph Maly's motion for summary judgment [136] is denied as moot.

Also before the Court is Defendants' motion for leave to file a third-party complaint for punitive damages against Nicholas Maly [119], which the Court denies. Defendants' motion to adjudicate pending motions [154] is denied as moot in light of this order.

**I.      Background**

On October 16, 2012, Plaintiff Catherine Ashley, as administrator of the Estate of Amber Adams, filed a complaint against Defendants Schneider National Carriers, Inc. and Shaun Christopher Jackson, arising out of a fatal injury that Amber Adams sustained in an auto accident on April 7, 2012. The complaint alleges that on April 7, 2012, a vehicle operated by Defendant Jackson was forced to pull over to the right shoulder of Northbound I-355, where it was struck by a vehicle driven by Nicholas Maly. Amber Adams, a passenger in the car driven by Nicholas Maly, was killed in the accident. Nicholas Maly and his father, Joseph Maly (who was also in the vehicle at the time of the accident) survived the crash.

**A.      Joseph Maly's Settlement with Catherine Ashley**

Catherine Ashley did not sue Joseph Maly. Instead, Ms. Ashley reached a settlement with Joseph Maly whereby he agreed to pay her $100,000.00 in exchange for her releasing all claims against him.[1] Joseph Maly now asks the Court to enter an order finding that the settlement agreement that he entered into with Ms. Ashley was fair, reasonable, and made in good faith pursuant to the Illinois Contribution Act, 740 ILCS 100/0.01, *et seq.*

The Court notes that Nicholas Maly filed a nearly identical motion[2] for good faith finding [96] relating to his settlement with his father, Joseph Maly. Defendants opposed that motion

---

[1] Catherine Ashley did not sue Nicholas Maly either. On October 11, 2012, Judge Michael J. Fusz entered an order in the Probate Court of Lake County Illinois, Gen. No. 12 P 314, issuing a good-faith finding as to Nicholas Maly's settlement with the Estate of Amber Adams. [See 119-3.] Ms. Ashley's settlement agreement with Joseph Maly [126, at 16] includes a discharge of all claims against both Joseph and Nicholas Maly.

[2] It appears as though Mr. Maly's attorneys used their original motion for good faith finding [96] as a template for their current motion for good faith finding [126], and in doing so inadvertently failed to update the names of the relevant parties in every instance. While these errors are readily detectable and easily decipherable within the context of the motion, to avoid confusion the Court notes that it reads the opening of Mr. Maly's prayer for relief as, "WHEREFORE, Third Party Defendant, *Joseph Maly*, respectfully requests that this Court find that the settlement entered into between Joseph Maly and *Catherine Ashley, as administrator of the Estate of Amber Adams*, has been made in good faith,"

[108], but the Court ultimately granted the motion and issued a good faith finding [118]. The present motion follows the same general format, but relates to Joseph Maly's settlement agreement with the Estate of Amber Adams. Defendants did not file a brief in opposition to Joseph Maly's motion, despite the Court's invitation to do so. [See 128.]

### B. Joseph Maly's Motion for Summary Judgment

On April 23, 2013, Joseph Maly filed his own lawsuit against Defendants arising out of the injuries that he sustained during the collision (Case No. 13-cv-3042). The Maly and Ashley cases were consolidated before this Court. Defendants then sought leave to file a third-party complaint against Joseph Maly seeking contribution for any damages that they may be obligated to pay Plaintiff Catherine Ashley as administrator of the Estate of Amber Adams. The Court granted Defendants' motion [66], and Defendants filed their third-party complaint for contribution against Mr. Maly [67].[3] One of the motions currently before the Court is Third-Party Defendant Joseph Maly's motion for summary judgment [135] regarding Defendants' contribution claims.

### C. Defendants' Pursuit of Punitive Damages Against Nicholas Maly

Nicholas Maly has reached independent settlements with both the Estate of Amber Adams and with his father, Joseph Maly, and both settlements have been deemed to be in good faith. [See 119-3 (re Estate of Amber Adams settlement, Probate Court order); 118 (re Joseph Maly settlement)]. In between these two settlements, Defendants filed a third-party complaint

---

subsection (b) of the prayer for relief as, "That all claims pending against *Joseph Maly*," and subsection (d) of the prayer for relief as, "That all future and potential claims for tort or contribution, against *Joseph Maly*, * * * arising out of the injury, damage or harm to *Amber Adams*, are hereby barred." [126, at 8 (alterations in italics).]

[3] The Court also granted Defendants' request to file a third-party complaint for contribution against Third-Party Defendant Nicholas Maly [70], in which Defendants sought contribution for any damages that they may be obligated to pay to Joseph Maly. That third-party complaint was later stricken pursuant to the Court's good faith finding as to the settlement between Nicholas Maly and Joseph Maly [118].

3

against Nicholas Maly [70], alleging that he was solely responsible for the crash and seeking contribution from him for any damages that Defendants might incur based on their potential liability to Joseph Maly. Understandably, Defendants did not seek contribution from Nicholas Maly for their potential liability to the Estate of Amber Adams because Nicholas Maly's settlement with Amber Adams had already been deemed in good faith, thus barring Defendants from seeking contribution for any such liabilities. But eight months after Defendants filed their third-party complaint against Nicholas Maly, the Court concluded that Nicholas Maly's settlement with his father was also in good faith [118], thus barring Defendants' pending third-party contribution claims against Nicholas Maly [70].

Defendants—cognizant of the impact of Nicholas Maly's good faith settlements with Amber Adams' Estate and with his father—nonetheless seek to file a third-party complaint for "punitive damages" against Nicholas Maly, arguing that he "proximately caused the injuries of Amber Adams." [See 119 (Motion); 121 (Proposed Complaint).] As the basis for their punitive damages claim, Defendants allege that Nicholas Maly lost control of his vehicle because he was driving substantially over the speed limit and making dangerous maneuvers on the highway. Defendants cite to witness testimony explaining that Nicholas Maly cut across multiple lanes of traffic at speeds well above the speed limit, and the black box taken from the vehicle showed that six seconds prior to the collision he was traveling at 94 mph. Defendants also highlight a number of traffic violations that Nicholas Maly has accrued in the three years since obtaining his driver's license, although only one of those pre-dated the accident: a February 10, 2011 ticket for speeding, 30–39 mph over the speed limit.

**II.    Analysis**

   **A.    Good Faith Settlement**

The Illinois Joint Tortfeasor Contribution Act creates a statutory right of contribution in actions "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death," 740 ILCS 100/2(a), to the extent that a tortfeasor pays more than his *pro rata* share of the common liability, 740 ILCS 100/2(b). The Act provides that:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.

740 ILCS 100/2(c). The "good faith" of a settlement is the only limitation that the Contribution Act places on the right to settle and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling tortfeasor. 740 ILCS 100/2(d); *Johnson v. United Airlines*, 784 N.E.2d 812, 817–18 (Ill. 2003); *Dubina v. Mesirow Realty Dev., Inc.*, 756 N.E.2d 836, 840 (Ill. 2001). The Illinois Supreme Court has held that a settlement is not in good faith if: "(1) the settling parties engaged in wrongful conduct, collusion, or fraud; or (2) the settlement conflicts with the terms of the Act or is inconsistent with the policies underlying the Act." *LaJuenesse v. Ford Motor Co.*, 642 F. Supp. 2d 835, 838 (N.D. Ill. 2009) (citing *Johnson*, 784 N.E.2d at 818). To the latter point, the Act promotes two main public policies: "the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Johnson*, 784 N.E.2d at 821.

A settling party seeking discharge from contribution liability bears the burden of making a preliminary showing of good faith. At a minimum, the settling party must show the existence of a legally valid settlement agreement; however, not all legally valid settlements satisfy the good-faith requirements. Once a preliminary showing is made, the "burden of proof on the issue of good faith of the settlor shifts to the party who claims that the settlement was not made in good faith or is collusive." *Barreto v. City of Waukegan*, 478 N.E.2d 581, 588 (Ill. App. Ct. 1985). "The party opposing settlement must prove by clear and convincing evidence that the settlement is invalid." *Alvarez v. Fred Hintze Const.*, 617 N.E.2d 821, 824 (Ill. App. Ct. 1993). Courts are not required to conduct a separate evidentiary hearing in order to make a determination regarding good faith. See *Roberson v. Belleville Anesthesia Assocs.*, 571 N.E.2d 1131, 1134 (Ill. 1991).

Here, Joseph Maly met his burden by establishing the existence of a legally valid settlement agreement between himself and Catherine Ashley, administrator of the Estate of Amber Adams. [126, at 16.] Under the express terms of the settlement agreement (dated October 25, 2012), Catherine Ashley released and forever discharged Nicholas and Joseph Maly from any and all claims against them arising from the vehicle collision in exchange for $100,000.[4] See, *e.g.*, *Alvarez*, 617 N.E.2d at 824 ("[U]nder the Contribution Act, a settlement is considered *prima*

---

[4] Joseph Maly received $100,000 in his settlement with his son, Nicholas Maly. That figure represented the maximum amount available under Nicholas Maly's insurance coverage. It appears as though Joseph Maly (and Nicholas Maly) then used those funds as consideration for the settlement with Catherine Ashley. Courts have found that settlement amounts that reflect the extent of the available insurance coverage are good-faith settlements, even where the potential exposure far exceeds the policy coverage. See, *e.g.*, *Costello v. Lytle*, 1996 WL 596417, at *3 (N.D. Ill. Oct. 9, 1996) (finding that settling a $3,000,000 wrongful death case for $100,000 was not in bad faith where the $100,000 represented the whole of the available insurance funds); see also *Warsing v. Material Handling Servs., Inc.*, 648 N.E.2d 1126, 1130 (Ill. App. Ct. 1995) (noting that "the small amount of a settlement is alone insufficient to establish bad faith"); *Mallaney*, 533 N.E.2d at 1117 (same); *Alvarez*, 617 N.E.2d at 825 ("Illinois' courts have consistently rejected challenges to good faith settlements based upon alleged disparities between the value of the settlement and the settling tortfeasor's relative culpability for the plaintiff's damages.").

*facie* in good faith when the settling party shows that the settlement is supported by consideration."). There is no evidence that the settlement agreement was obtained through wrongful conduct, collusion, or fraud. *Johnson*, 784 N.E.2d at 821. And there are no indications that the settlement conflicts with the policies underlying the Act (*i.e.*, "the encouragement of settlements and the equitable apportionment of damages among tortfeasors," *id.*).

This evidence is sufficient to make a preliminary showing of good faith, thus shifting the burden to Defendants to show by clear and convincing evidence that the settlement was made in bad faith. In their most recent filing, Defendants explain that they did not file a brief in opposition in view of the Court's prior statement that the "[p]arties should pay careful attention to the Court's prior opinion as to the motion for a good faith finding regarding Nicholas Maly." [154, at 2.] The Court infers from Defendants' statement that they did not believe that any effort to try to distinguish Joseph Maly's motion from Nicholas' would be persuasive to the Court. The Court concurs in that assessment, and thus Joseph Maly's preliminary showing wins the day. See *Mallaney v. Dunaway*, 533 N.E.2d 1114, 1117 (Ill. App. Ct. 1988) ("A settlement given in good faith may be presumed reasonable in the absence of a timely objection in the trial court."). Third-Party Defendant Joseph Maly's motion for good faith finding [126] is granted.

### B. Joseph Maly's Motion for Summary Judgment

Because Joseph Maly settled in good faith with Catherine Ashley as administrator of the Estate of Amber Adams, Defendants cannot sue Joseph Maly for contribution based on their potential liability to Catherine Ashley. See, *e.g.*, *Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1250 (Ill. 1988) ("[A] tortfeasor who settles with the plaintiff in 'good faith' pursuant to section 2(c) of the Act is discharged from all liability for contribution to other tortfeasors."); *Freislinger v. Emro Propane Co.*, 99 F.3d 1412, 1416 (7th Cir. 1996) ("[D]efendants who settle

in good faith with plaintiff may not be sued by joint tortfeasors for contribution." (citing *Halleck v. Coastal Building Maintenance Co.*, 647 N.E.2d 618, 628 (Ill. 1995))). Here, Defendants' third-party complaint against Joseph Maly is composed entirely of claims for contribution. [67, at 1 (referring to their motion as an "Amended Third-Party Complaint for Contribution against Third-Party Defendant, JOSEPH MALY").] Accordingly, Defendants' third-party complaint [67] is stricken in its entirety pursuant to § 2(d) of the Illinois Joint Tortfeasor Contribution Act. Joseph Maly's motion for summary judgment [136] is denied as moot.

### C. Defendants' Third-Party Complaint for Punitive Damages

Defendants have moved this Court for leave to file a third-party complaint for punitive damages against Nicholas Maly [119]. District courts have discretion to determine whether a third-party complaint is appropriate when a defendant seeks to file one more than 14 days after serving its original answer. See Fed. R. Civ. P. 14(a)(1); *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 650 (7th Cir. 2002). But the Seventh Circuit has explained that district courts "should not preclude [the] prosecution" of third-party actions so long as they "fall[] within the general contours limned by Rule 14(a), do[] not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice." *Marseilles*, 299 F.3d at 650 (citation omitted).

The "general contours" of Rule 14(a) provide that a defendant may file a third-party complaint against, or *implead*, "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). Impleader "must involve an attempt to pass on to the third party all or part of the liability asserted against the defendant. * * * [I]t must be an assertion of the third-party defendant's *derivative* liability to the third-party plaintiff." 3 Moore's Federal Practice § 14.04[3][a] (3d ed. 2011).

8

In their proposed third-party complaint, Defendants seek "punitive damages" from Nicholas Maly because he allegedly "proximately caused the injuries of Amber Adams." [121, ¶ 19.] But neither Catherine Ashley nor Joseph Maly has requested punitive damages against Defendants, and thus Defendants are attempting to "pass on" liability to Nicholas Maly that is not contemplated in the direct actions against Defendants. Thus, Defendants' proposed impleader action does not fall within the contours of Rule 14, and must be denied.

Alternatively, because Defendants seek damages from Nicholas Maly based on his derivative liability for Amber Adams' injuries, Defendants' claim sounds in contribution, even if Defendants don't label it as such (*i.e.*, certainly Defendants would lack standing to sue Nicholas Maly *directly* for injuries incurred by Amber Adams). And while contribution claims *do* fall within the contours of Rule 14, Nicholas Maly's good-faith settlements with the Estate of Amber Adams [119-3] and with Joseph Maly [118] bar any claims for contribution against Nicholas Maly based on Defendants potential liability to these two individuals. In addition, the Illinois Supreme Court has held that Defendants cannot obtain contribution for punitive damages. *Hall v. Archer-Daniels-Midland Co.*, 524 N.E.2d 586, 592 (Ill. 1988). Thus, even if Defendants' proposed complaint were proper under Rule 14, it is nonetheless barred by § 2(d) of the Illinois Joint Tortfeasor Contribution Act and Illinois' refusal to allow third-party plaintiffs to recover punitive damages through contribution.[5]

Finally, Nicholas Maly argues that Defendants' proposed complaint is untimely and Defendants lack a valid excuse for their delay. According to Rule 14, a defendant must obtain

---

[5] Nicholas Maly also argues that Defendants' proposed complaint—which alleges only one count of "punitive damages"—fails to state an independent cause of action because under Illinois law, "[p]unitive damages are a type of relief, not an independent cause of action." *Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 692 N.E.2d 269, 274 (Ill. 1998); *Kemner v. Monsanto Co.*, 576 N.E.2d 1146, 1153 (Ill. App. Ct. 1991) ("Illinois does not recognize a cause of action for punitive damages alone."). While true, this argument is more suited for a motion to dismiss, and is not directly relevant to whether the proposed third-party complaint conforms to Rule 14.

leave from the court if it wishes to file a third-party complaint more than 14 days after serving its original answer. Fed. R. Civ. P. 14(a). Here, Defendants served their answer to Catherine Ashley's complaint on December 17, 2012 [11] and to Joseph Maly's complaint on August 30, 2013 [27]—well over a year before proposing their third-party complaint on October 15, 2014 [119]—meaning that Defendants' 14-day window has long since passed. Thus, the Court must consider Defendants' "reasons for delay" and whether filing the complaint at this stage would unnecessarily prejudice the parties. *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1251 (7th Cir. 1993) (affirming the denial of a motion to file a third-party complaint presented after discovery and three weeks before summary judgment motions were due because the amendment would have substantially delayed and unnecessarily complicated the proceedings); *Albino v. City of Chicago*, 578 F. Supp. 1487, 1489–90 (N.D. Ill. 1983) (denying an impleader action where the defendants failed to justify their 18-month delay); *Muniz v. Rexnord Corp.*, 2006 WL 1749646, at *1–3 (N.D. Ill. June 21, 2006) (striking a third-party complaint filed near the close of discovery where defendants offered no justification for their delay).

Defendants argue that their delay stemmed from their need to conduct discovery before deciding whether to pursue punitive damages against Nicholas Maly. Defendants also argue that Nicholas Maly has been a major player in this lawsuit since the start (for obvious reasons), such that this third-party complaint should come as no surprise to him. Nicholas Maly counters by arguing that Defendants had sufficient information to bring this claim long ago, and by not doing so, Nicholas Maly was unrepresented by legal counsel during eleven depositions of witnesses and investigating officers, leaving him ill-equipped to cross-examine those witnesses in his defense. To go back and re-depose these individuals now, Maly argues, would cause significant delay and prejudice to all.

The Court agrees with Nicholas Maly. The facts upon which Defendants based their punitive-damages allegations have been known to Defendants for some time. Indeed, in their answer to Catherine Ashley's complaint filed on December 17, 2012, Defendants argued that the Nicholas Maly "dr[ove] substantially over the speed limit and made dangerous maneuvers with his vehicle," such that the "willful and wanton conduct of Nicholas Maly was the sole, proximate cause of Amber Adams['] injuries and death." [11, at 5, 10–14.] Defendants reiterated these same allegations on January 15, 2014 when they filed a third-party complaint against Nicholas Maly for contribution based on Defendants' potential liability to Joseph Maly, stating that "Nicholas Maly operated his vehicle intentionally, willfully and recklessly [by] driving substantially over the speed limit and ma[king] dangerous maneuvers with his vehicle." [70, at 6.] And in their proposed third-party complaint filed on October 15, 2014, Defendants make this same allegation for a third time, now as the basis for their punitive damages claim. [121, at 3 ("Nicholas Maly operated his vehicle intentionally, willfully and recklessly [by] driving substantially over the speed limit and ma[king] dangerous maneuvers with his vehicle.").] Defendants' story has evolved little over the past two years, rendering unavailing their observation that "many times a claim for punitive damages cannot be sustained, or even known about, until after some witness testimony and document disclosures reveal the basis for the claim." [133, at 7.] And Defendants' argument that re-deposing these eleven witnesses is not necessary because Catherine Ashley's attorney "thoroughly cross examined" the relevant witnesses and her interests are aligned with Nicholas Maly's also misses the mark (quite dramatically, in fact). To be sure, the allegations about Nicholas Maly's driving immediately prior to the accident suggest the kind of reckless behavior that the law ought to deter. However, if the Court were inclined to let Defendants bring a claim for punitive damages against Nicholas

11

Maly, the Court certainly would not restrict his defense of that claim to deposition testimony elicited by someone else's legal counsel. Further, unlike the Court's rationale in its prior order granting Defendants leave to file third-party complaints against Nicholas and Joseph Maly [66], at this point discovery *has* ended, and at least one dispositive motion *has* been filed. It is simply too late in the game to halt the progress of this case by requiring the parties to rehash a substantial portion of the discovery process. Defendants' unjustified delay in presenting their third-party complaint provides a tertiary ground for denying their motion.

**III.  Conclusion**

For the foregoing reasons, Third-Party Defendant Joseph Maly's motion for a finding of good-faith settlement [126] is granted, and Defendants' third-party complaint against Joseph Maly [67] is stricken. Joseph Maly's motion for summary judgment is [135] is denied as moot. Defendants' motion for leave to file a third-party complaint for punitive damages against Nicholas Maly [119] is denied. Defendants' motion to adjudicate pending motions [154] is denied as moot in light of this order.

Dated: July 23, 2015

Robert M. Dow, Jr.
United States District Judge